UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KORT CHRISTOFFERSEN, | REPORT AND RECOMMENDATION |
| Plaintiff, | Case No. 4:25-cv-00118-DN-PK |
| v. | District Judge David Nuffer |
| NUCOR CORPORATION, et al., | Magistrate Judge Paul Kohler |
| Defendants. | |

This matter is before the Court on Defendant Nucor Corporation's Partial Motion to Dismiss.[1] This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).[2] For the reasons discussed below, it is recommended that the Motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is a former employee of Defendant Nucor. Plaintiff alleges that he suffered a workplace medical injury and claims various coworkers and supervisors failed to adequately respond. Plaintiff further claims he was harassed and retaliated against, ultimately leading to his constructive discharge. In the operative Complaint,[3] Plaintiff brings a variety of federal and state claims. Defendant seeks partial dismissal.

---

[1] Docket No. 34, filed December 22, 2025.

[2] Docket No. 22.

[3] Docket No. 28.

1

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding pro se, the Court construes his pleadings liberally,[4] but will not assume the role of advocate for a pro se litigant.[5] In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[6] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

---

[4] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[5] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[11]

## III.  DISCUSSION

Defendant seeks dismissal of Plaintiff's claims under the Rehabilitation Act, the Utah Protection of Public Employees Act ("UPPEA"),[12] his common law claims for negligent hiring, supervision, and retention and intentional infliction of emotional distress ("IIED"), as well as his claim for constructive discharge. Defendant also seeks dismissal of potential claims under statutes referenced in Plaintiff's Complaint but not included as separate causes of action.

Plaintiff responds by conceding his claim under the UPPEA and acknowledging that a claim for constructive discharge is not an independent claim. Plaintiff also clarifies that he does not assert claims under Occupational Safety and Health Act ("OSHA"), the Utah Occupational Safety and Health Act ("UOSH"), or the Utah Antidiscrimination Act ("UADA"). Plaintiff does not address Defendant's request to dismiss any potential claim under 42 U.S.C. § 1981, thereby waiving it.[13] Based upon this, it is recommended that these claims, to the extent they are asserted in the Complaint, be dismissed with prejudice. This leaves Plaintiff's claims under the Rehabilitation Act and for negligence and IIED.

A.      REHABILITATION ACT

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

---

[11] *Iqbal*, 556 U.S. at 679 (internal citations, quotation marks, and alterations omitted).

[12] In his Complaint, Plaintiff refers to this as the Utah Whistleblower Act but cites to the UPPEA.

[13] *Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. 2003) (argument waived when not raised in initial response to motion to dismiss).

receiving Federal financial assistance . . . ."[14] "A prima facie case under § 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff."[15]

Defendant challenges the sufficiency of Plaintiff's Complaint on the third element. In his Complaint, Plaintiff alleges that "[u]pon information and belief, Nucor receives federal funding and federal safety-related grants, making it a covered entity under § 504 of the Rehabilitation Act."[16] This type of threadbare allegation is insufficient under *Twombly* and *Iqbal*.[17]

Plaintiff challenges this conclusion in his Opposition, wherein he claims his Complaint "alleges that Defendant participates in federally administered safety programs, receives safety-related federal benefits, and operates under federal oversight and compliance mechanisms tied to those programs."[18] Tellingly, Plaintiff does not cite to the provision of the Complaint containing these allegations because they are not present. And since these allegations are not included in the

---

[14] 29 U.S.C. § 794(a).

[15] *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008)

[16] Docket No. 28 ¶ 85.

[17] *See, e.g., Loesby v. Fischer*, No. 20-CV-01827-RM-NRN, 2021 WL 3555786, at *6 (D. Colo. July 1, 2021) (concluding that the plaintiff's "Section 504 claim fails as a matter of law because the Second Amended Complaint does not plausibly allege that Defendants receive federal assistance"); *Hunt v. Univ. of Pittsburgh Med. Ctr.*, 2019 WL 3776545, at *5 & n.8 (M.D. Pa. Aug. 12, 2019) (allegations that the defendant "receives federal financial assistance and as such is subject to Section 504" did not support a plausible inference that the defendant was a recipient of federal financial assistance).

[18] Docket No. 35, at 3.

Complaint, the Court need not determine whether they would be sufficient to meet this element.[19]

Plaintiff further argues that the assessment of whether an entity is covered by the Rehabilitation Act is a fact-specific inquiry that is ill-suited for resolution on the pleadings. To this end, Plaintiff requests leave to amend to shore up his deficient allegations.[20] The Court agrees that, given his pro se status and the possibility that he could plausibly allege that Defendant receives federal financial assistance, Plaintiff should be permitted leave to amend his Complaint to provide additional details that might support his claim that Defendant is subject to the Rehabilitation Act. Therefore, the Court recommends dismissal of Plaintiff's Rehabilitation Act claim without prejudice with leave to amend.

B.    NEGLIGENCE

To state a claim for negligent hiring, supervision, or retention,[21] Plaintiff must allege that Defendant "had a duty to protect him from harm at the hands of its employees, a negligent breach of that duty, and the harm and damages caused by that breach."[22] A duty may arise in this

---

[19] *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established . . . that in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").

[20] Plaintiff further argues that amendment should be permitted because "[d]ismissal at this stage would improperly deny Plaintiff access to information exclusively within Defendant's control." Docket No. 35, at 3. The Court disagrees "because information about the government's contracts with business entities is generally publicly available." *Leute v. Int'l Bus. Machines Corp.*, No. 2:25-CV-00656-CR, 2026 WL 63448, at *3 (D. Vt. Jan. 8, 2026)

[21] As the Utah Supreme Court has explained: "The causes of action variously termed 'negligent hiring,' 'negligent supervision,' and 'negligent retention' are all basically subsets of the general tort of negligent employment. These variants differ only in that they arise at different points in the employment relationship." *Retherford v. AT&T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 973 n.15 (Utah 1992) (internal citation omitted).

[22] *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 42, 321 P.3d 218 (internal quotation marks and citation omitted).

context "when an employer could reasonably be expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat to a plaintiff of its employee's actions and to act to minimize or protect against that threat."[23] "There is no duty to protect persons from unforeseeable risks of harm at the hands of another."[24]

Defendant argues that Plaintiff has failed to adequately plead a duty. In response, Plaintiff argues that "Defendants knew or should have known of supervisory misconduct, retaliation, safety violations, and improper disclosure of medical information; failed to supervise or intervene."[25] But Plaintiff fails to point to any factual allegations in his Complaint that would support such a finding. Indeed, Plaintiff's Complaint appears to reflect that he largely reported the alleged incidents well after the incidents occurred and even after his constructive discharge.[26] Such allegations do not support that Defendant had the requisite knowledge to create a duty. However, because it is possible that Plaintiff could add further allegations that could support his claim, dismissal without prejudice and leave to amend is recommended.

*Mafua v. McKenzie*[27] is helpful in demonstrating how a negligence claim based on alleged safety violations might survive. That case addressed employer liability in the case of a car accident caused by an employee. Addressing a claim of negligent supervision or training, the court denied summary judgment where there was evidence that the employee was a "frequently

---

[23] *Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995).

[24] *J.H. ex rel. D.H. v. W. Valley City*, 840 P.2d 115, 126 (Utah 1992)

[25] Docket No. 35, at 3.

[26] Docket No. 28 ¶ 16 ("Immediately after [his constructive discharge in October 2024] Plaintiff sent a detailed resignation email to GM Adam Zewe documenting discrimination and retaliation."); *id.* ¶ 17 ("In May 2025, Plaintiff reported a severe medical-privacy violation involving the distribution of video footage of his medical collapse and seizure by Nucor supervisors.").

[27] No. 1:18-cv-00064-HCN, 2019 WL 5310244 (D. Utah Oct. 21, 2019).

inattentive and potentially dangerous driver, that [the employer] knew or should have known of the threat posed by [the employee's] driving, and that [the employer] failed to supervise [the employee] in a manner that would protect [the p]laintiff (and others) against this threat."[28] Applying that same logic to Plaintiff's claims of alleged safety misconduct, it is possible Plaintiff could plead a plausible claim if Defendant had knowledge of employees with serious safety issues, hired or retained them without taking remedial action, and their actions resulted in harm to Plaintiff. Because it is possible that Plaintiff could supply additional allegations that, if supported, would survive dismissal, amendment is recommended.

In addition to arguing that Plaintiff's claim is not adequately pleaded, Defendant argues that it is preempted by the UADA. Because this issue may arise if Plaintiff elects to amend, the Court will discuss it.

The UADA "provides an administrative remedy for discrimination, retaliation, or harassment by an employer on the basis of" a protected class characteristic.[29] This administrative remedy "preempt[s] all common law remedies for employment discrimination."[30] To determine whether the UADA preempts a state law cause of action in an employment discrimination case, the Court must first determine "what injuries the UADA is designed to address,"[31] which have been established as "all manner of employment discrimination against any member of the

---

[28] *Id.* at *4.

[29] *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 2, 61 P.3d 989.

[30] *Id.* ¶ 9.

[31] *Retherford*, 844 P.2d at 965.

specified protected groups."[32] The legislative intent was to "completely blanket the field of employment law in Utah."[33]

Next, the Court must determine whether "employment discrimination . . . supplies an indispensable element of any of [the plaintiff's] causes of action."[34] State law tort claims are not preempted if "discrimination is not an indispensable element of [the] claim[ ]." This is shown by the plaintiff's ability "to maintain [his state law] claims without alleging retaliatory harassment" or other discriminatory injury covered by the UADA.[35] In making this determination, the Court looks at "the nature of the injury for which [the] plaintiff makes [the] claim, not the nature of the defendant's act which the plaintiff alleges to have been responsible for that injury."[36]

Under this standard, the majority of Plaintiff's negligence claim would be preempted. Plaintiff's claim is largely premised on disability discrimination and retaliation, which obviously have harassment as an indispensable element. However, it is possible that at least some portion of Plaintiff's negligence claim—if plausibly alleged—would not be preempted, particularly the portions of that claim related to alleged safety violations and improper disclosure of medical information. Neither of those portions of Plaintiff's claim has discrimination as an indispensable element. As such, it is recommended that Defendant's preemption argument be rejected as it relates to his negligence claim as a whole and permit amendment.[37]

---

[32] *Id.* at 966.

[33] *Gottling*, 2002 UT 95, ¶ 12.

[34] *Retherford*, 844 P.2d at 966.

[35] *Id.* at 967.

[36] *Id.* at 965 (internal quotation marks and citation omitted).

[37] While portions of Plaintiff's negligence claim are subject to dismissal, partial dismissal is not proper. *FTC v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 & nn.121–22 (D. Utah 2019) (explaining that partial dismissal of claims is not appropriate under Rule 12(b)(6)); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule

C.      IIED

"In order to demonstrate the intentional infliction of emotional distress [IIED], a plaintiff must show: (1) intentional or reckless conduct (2) which is 'of such a nature as to be considered outrageous and intolerable in that [it] offend[s] against the generally accepted standards of decency and morality.'"[38] "To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[39] "The liability [for IIED] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[40]

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.[41]

"If the trial court determines that a defendant's conduct was not outrageous as a matter of law, then the plaintiff's claim fails."[42]

---

12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief. Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for "[p]artial [s]ummary [j]udgment" and require parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought.") (internal citation omitted).

[38] *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 950 (10th Cir. 2011) (quoting *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 969 (Utah 2008)).

[39] *Oman*, 194 P.3d at 969 (citation omitted).

[40] *Bennett v. Jones Waldo Holbrook & McDonough*, 2003 UT 9, ¶ 64, 70 P.3d 17 (quoting Restatement (Second) of Torts § 46 cmt. d).

[41] Restatement (Second) of Torts § 46 cmt. d.

[42] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 38, 56 P.3d 524 (citations omitted).

The Utah Supreme Court has "recognized that while a single insult, indignity, or threat may not give rise to liability for intentional infliction of emotional distress, a continuous and ongoing pattern of the same may constitute extreme, intolerable, and outrageous conduct and thus result in liability."[43] For example in *Retherford*, the plaintiff sufficiently alleged a claim of intentional infliction of emotional distress based on an ongoing pattern of intimidation and harassment.[44] Specifically, the plaintiff alleged that after she filed a sexual harassment complaint, her co-workers began to harass and intimidate her, and continued to do so for a number of months.[45] The plaintiff alleged "months of persecution by her co-workers" where they "shadowed her movements, intimidated her with threatening looks and remarks, and manipulated circumstances at her work in ways that made her job markedly more stressful, all in retaliation for her good-faith complaint of sexual harassment."[46]

In *Cabaness*, the plaintiff "alleged an ongoing and continuous pattern of abusive, intimidating, and harassing behavior from his supervisor."[47] The plaintiff alleged that throughout his two-decade career, his supervisor "insulted and demeaned him by, among other things, calling him 'dumbass,' 'jackass,' and 'ass hole.'"[48] Numerous other employees testified that the supervisor "frequently used gross profanity and consistently verbally harassed, intimidated, and ridiculed the employees he supervised."[49] The Utah Supreme Court noted that "[w]hile any of

---

[43] *Cabaness v. Thomas*, 232 P.3d 486, 500 (Utah 2010) (citing *Retherford*, 844 P.2d at 975–76, 978).

[44] *Retherford*, 844 P.2d at 975.

[45] *Id.* at 978.

[46] *Id.*

[47] *Cabaness*, 232 P.3d at 500.

[48] *Id.*

[49] *Id.* at 493.

these alleged insults or indignities on their own may not rise to the level of outrageous and intolerable conduct, taken together, and viewed in a light most favorable to [the plaintiff]," "reasonable minds could differ regarding whether [the supervisor's] conduct was outrageous and intolerable."[50]

While certain of Plaintiff's allegations resemble those in *Retherford* and *Cabaness*— namely unpleasant working conditions and allegations of harassment and retaliation—they fail to meet the high bar required to sustain an IIED claim. Therefore, dismissal is recommended. Because it does not appear that Plaintiff would be able to amend his Complaint to meet the requirements of an IIED claim, leave to amend is not recommended.

## IV. CONCLUSION AND RECOMMENDATION

For these reasons, the undersigned recommends Defendant's Motion be granted in part and denied in part as set forth above.

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 19th day of February, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[50] *Id.* at 501.